### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| C.F.B., a minor,<br>by and through her next friend,<br>TERRI E. BAKER,<br><br>    Plaintiff,<br><br>vs.<br><br>THE BOARD OF COMMISSIONERS OF<br>JOHNSON COUNTY, KANSAS, *et al.* | )<br>)<br>)<br>)<br>)<br>) Case No. 2:16-cv-02645<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCLOSURE AND DISCOVERY**

Plaintiff C.F.B., a minor, by and through her grandmother and next friend, Terri E. Baker, provides the following memorandum in opposition to the Motion to Stay Disclosure and Discovery filed by defendants The Board of Commissioners of the County of Johnson, Kansas, Sheriff Frank Denning, Lieutenant Thomas Reddin, Sergeant Christopher Mills and Deputy Travis Turner.

**1. The Body Camera Videos Alone Are Not Sufficient to Support Summary Judgment on Qualified Immunity So Discovery Must Proceed**

Plaintiff is mindful of the general proposition that a stay of discovery can be appropriate in cases where defendants assert qualified immunity as a defense. *See* Defendants' Motion to Stay Disclosure and Discovery (Doc. 14), pg. 2. The Tenth Circuit, however, has disagreed with the notion that because qualified immunity may constitute an "immunity from suit," it must therefore also provide an "immunity from discovery." *Maxey v. Fulton*, 890 F.2d 279, 282 (10th Cir. 1989) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)). In *Maxey*, the court agreed with the Fifth Circuit in finding that the Supreme Court's decision in *Mitchell* and *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) did not mean qualified immunity shields "government officials from *all* discovery but only from discovery which is

avoidable or overly broad." *Maxey*, 890 F.2d at 282 (emphasis added) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987)).

The Tenth Circuit has since reaffirmed its position on permitting discovery in the context of qualified immunity claims in *Garrett v. Stratman*, 254 F.3d 946, 953 (10th Cir. 2001).

> Discovery orders entered when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad. . . . .

*Garrett*, 254 F.3d at 953 (quoting *Maxey*, 890 F.2d at 282 (quoting *Lion Boulos*, 834 F.2d at 507-08)).

In asserting their qualified immunity defense, defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, not a motion to dismiss. *See* Defendants' Motion for Summary Judgment (Doc. 10) and Memorandum in Support (Doc. 11). The Memorandum in Support contains over five pages of material facts. *See* Memorandum in Support (Doc. 11), pgs. 3-8. Defendants rely upon a "reasonable mistake of fact" in misidentifying S.F.M. *Id.* at 14-15. Notwithstanding the fact Sgt. Mills grabbed the wrong child, defendants also argue Sgt. Mills "reasonably" believed he had the authority to physically seize and deliver S.F.M. to Ryan McCormick based on the facts known to him at the time. *Id.* at 18-19. Defendants note the deputies conferred with "officers from the Civil Division about the PFA Order" as support for immunity under the second prong of the qualified immunity test. *Id.* at 19-20. All these factual citations and fact-based arguments establish that defendants' qualified immunity defense "turns at least partially on a factual question." *Maxey*, 890 F.2d at 282 (citation omitted).

These alleged facts will certainly need further clarification, and in some cases need an actual basis in the first place. Other than the PFA Order, defendants' only factual support for their

2

Motion are three body camera videos that recorded certain portions of the relevant factual timeframe. The videos do not provide the only facts necessary to decide defendants' Motion.

Exhibit B comes from Deputy Turner's body camera, and records his interaction with Ryan McCormick and his mother. *See* Defendants' Memorandum in Support (Doc. 11), Ex. B. The audio does not begin until approximately 30 seconds into the video. *Id.* at 0:30. The following timeline highlights just a handful of the problems the Court will encounter trying to decide the Motion on the videos alone:

- At 1:40, Deputy Turner calls an unknown person on his cell phone, perhaps a supervisor. Only one side of the conversation (Turner) is audible.

- At 2:52, while still on the call, Deputy Turner discusses whether the current situation changes "anything from what we talked about earlier." There is no indication from the video as to who was involved in the previous conversation, when it occurred, or what was said.

- At 16:10, an unknown person calls Deputy Turner, perhaps someone from the Sheriff's Department's Civil Division. From Deputy Turner's half of the conversation, the person seems to be advising him regarding service of the PFA Order. Once again, however, there is no indication from the video as to the identity of the other person or what was discussed.

- At 20:57, after Deputy Turner has concluded the latest call, he advises Ryan McCormick and his mother that he is going to tell Maggie McCormick "basically, if she don't give up the kid, she's going to jail." From the video alone, it is impossible to determine whether someone in one of the previous conversations

3

advised him to adopt this position regarding his authority, or whether he reached this determination on his own.

- At 23:42, Deputy Turner receives another call.  No facts are available from the videos about who has called him, or what is being said on the other end.  The Exhibit B video cuts off right in the middle of this conversation.

- The Exhibit C video is also from Deputy Turner's body camera, but it begins as he is pulling up to the driveway of plaintiff's property.  Based on the end of the Exhibit B video, there is a significant time gap of unknown duration between the end of the Exhibit B video and the beginning of the Exhibit C video.  Deputy Turner no longer appears to be on a call, and there is no audio for the first 30 seconds of the video.  *See* Defendants' Memorandum in Support (Doc. 11), Ex. C.

- There is no video whatsoever of any interaction between Deputy Turner, Sgt. Mills, and Lt. Reddin prior to them approaching plaintiff's property.  Exhibit C shows Sgt. Mills and Lt. Reddin parking their vehicles behind Deputy Turner's outside plaintiff's property.  Exhibit D is a video from Sgt. Mills body camera, and begins with him pulling up and exiting his vehicle.  He may be having some sort of conversation with Deputy Turner or Lt. Reddin, but again there is no audio for approximately the first 30 seconds of the video.  *See* Defendants' Memorandum in Support (Doc. 11), Ex. D, 0:00-0:31.

In their Motion for Summary Judgment, defendants assert a number of arguments regarding the factual knowledge of Deputy Turner, Sgt. Mills, and Lt. Reddin.  The three videos cited as the sole basis for that knowledge are woefully inadequate.  Defendants argue Sgt. Mills reasonably believed that C.F.B., a three-year-old girl, was S.F.M., a 10-month-old boy.  *See* Defendants'

Memorandum in Support (Doc. 11), pg. 14-15.  Defendants claim "[o]nly Deputy Turner had any indication that S.F.M. was a boy, as Mr. McCormick mentioned his 'son' at the gas station before the deputies proceeded to serve and execute the order."  *Id.* at 15.  There is nothing in any of the videos, however, to indicate what Sgt. Mills knew or did not know when he approached plaintiff's property.

All that can be gleaned from the videos is an assumption that Sgt. Mills knew to meet one or more deputies at plaintiff's property.  The level and scope of Sgt. Mills' knowledge regarding the PFA Order, the background of the underlying dispute between Ryan and Maggie McCormick, and any details regarding S.F.M. will be vital to a determination of whether there was a reasonable mistake of fact supporting a qualified immunity finding.  Likewise, the extent of Sgt. Mills' knowledge regarding the basis for, contents of, and the enforcement of the PFA Order will be key factors in determining whether he had reasonable belief regarding his authority.  Despite the Exhibit B and C videos, there are significant gaps and unknowns regarding Deputy Turner's knowledge of the same factors.  There is virtually nothing in any of the three videos to establish what Lt. Reddin knew or did not know at the time he arrived at plaintiff's property.  These are all necessary facts to determine defendants' immunity claims, and they must be developed through discovery.

Plaintiff intends to file a declaration pursuant to Fed. R. Civ. P. 56(d) as part of her response to defendants' Motion for Summary Judgment.  The summary provided above is not an exhaustive list of the issues for which discovery will be needed prior to any decision on defendants' Motion for Summary Judgment.  Plaintiff refers the Court to the Memorandum in Opposition she will file in response to defendants' Motion for Summary Judgment and Memorandum in Support, and asks

5

the Court to also consider arguments made in support of her Rule 56(d) request in ruling upon defendants' Motion to Stay Disclosure and Discovery.

### 2. Plaintiff Should be Afforded an Opportunity to Establish Her Official Capacity and *Monell* Claims

In addition to seeking judgment on qualified immunity, defendants also argue they are entitled to summary judgment for any official capacity or municipal liability claims under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *See* Defendants' Memorandum in Support, pgs. 23-27. Defendants point to a lack of detailed allegations from plaintiff regarding their policies, procedures, and training deficiencies regarding deputies' service of and authority under PFA orders. *Id.* at pgs. 25-27.

Given the timing of defendants' Motion, plaintiff has not had any opportunity whatsoever to develop a record regarding the various responsibilities of the Board of County Commissioners or Sheriff Frank Denning in training and supervising Sheriff's Department deputies on the issues, authority, and situations presented by this case. Defendants argue the lack of or conclusory nature of plaintiff's allegations related to her official capacity or municipal liability claims mandate summary judgment in their favor, but they do not recognize the obvious status of this case being in its earliest stages.

Instead, defendants assume plaintiff should have provided highly detailed allegations regarding specific policies, procedures, or customs established by the County or Department without even having had an opportunity to review a single document or elicit testimony regarding any policy, procedure, custom or training. Defendants' complaints appear even more unfounded and premature when the three videos they have introduced as the sole factual support for summary judgment do not even provide all the facts regarding conversations had by deputies regarding their training, supervision, and authority in handling the PFA Order at issue in this case.

As noted above, plaintiff intends on including a Rule 56(d) request for discovery as part of her response to defendants' Motion.  Federal courts have recognized the obvious disadvantage a plaintiff faces in opposing a summary judgment motion on his or her *Monell* claims when that plaintiff has had little, or no, opportunity to develop any factual support for his or her position.  In *Smith v. Lafayette Parish*, No. 11-1406, 2015 WL 1508384, at *17 (W.D. La. Mar. 31, 2015), the court denied summary judgment as to plaintiff's *Monell* claims and allowed her to take discovery regarding defendants' municipal liability after initially limiting discovery to the qualified immunity issue.  After permitting plaintiff "ample time" to conduct fact discovery, including depositions, regarding individual liability, another court ruled plaintiff should be allowed further *Monell* discovery because of an unprepared witness and the resulting inadequate deposition.  *Hollins v. City of New York*, No. 10 Civ. 1650(LGS), 2014 WL 836950, at *4 (S.D.N.Y. Mar. 3, 2014).  The court allowed plaintiff to complete depositions of the defendants and fact witnesses, and review documentary evidence of prior complaints of excessive force and their resolution, prior to the court's summary judgment determination in *Hunter v. City and County of San Francisco*, No. 11-4911 JSC, 2012 WL 48341634, at 10 (N.D. Ca. Oct. 10, 2012).

Conversely, in *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1262 (E.D. Wa. 2013), the court denied additional discovery pursuant to a Rule 56(d) request, but only *after* noting it had "explicitly held that discovery was not stayed" regarding plaintiff's *Monell* claim.  The court found no justification for delaying its decision on plaintiff's *Monell* claim because she had been afforded sufficient time to develop evidence.  *Id.*

These cases serve as examples for courts permitting at least *some* discovery to be taken prior to issuing any ruling on a summary judgment.  Plaintiff has had no opportunity to engage in any discovery regarding the Department's policies or procedures regarding the service of and

7

authority under PFA Orders. She has not been able to see a single policy or procedure manual, or training document, or depose a single witness regarding any training or supervision issues. The videos provide plaintiff with almost nothing to oppose defendants' Motion as to her *Monell* claims. She must be allowed to develop evidence on these claims before the Court issues any ruling on them.

### 3. Plaintiff Could Suffer the Ultimate Prejudice if Discovery Does Not Proceed

Defendants cite the videos and the PFA Order as the "only" evidence plaintiff needs to oppose their summary judgment motion, which, if granted in its entirety, would obviously dispose of plaintiff's case. There could be no greater prejudice to plaintiff. As explained above, plaintiff has described the insufficiency of defendants' suggested factual record. Plaintiff intends to provide even more detail through her Memorandum in Opposition to defendants' Motion for Summary Judgment, to which she refers and incorporates through this Memorandum.

WHEREFORE, plaintiff respectfully requests an order from the Court denying defendants' Motion to Stay Disclosure and Discovery and allowing discovery to proceed; or, in the alternative, plaintiff respectfully requests an order from the Court at least permitting discovery by plaintiff tailored to the factual issues presented in defendants' Motion for Summary Judgment, and such further relief as the Court deems fair and equitable.

Respectfully submitted,



By:   */s/ Benjamin R. Prell*
      Matthew T. Geiger    KS # 19205
      Benjamin R. Prell     KS # 21244
      10000 College Boulevard, Suite 100
      Overland Park, Kansas 66210
      913-661-2430 (telephone)
      913-362-6729 (facsimile)
      mgeiger@geigerprell.com
      bprell@geigerprell.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

On November 29, 2016, I electronically filed this Memorandum in Opposition to Defendants' Motion to Stay Disclosure and Discovery with the Clerk of the Court using the CM/ECF system, which will deliver a copy by electronic means to the following counsel of record:

Kirk T. Ridgway
Brett T. Runyon
FERREE, BUNN, RUNDBERG & RIDGWAY, CHTD.
9393 W. 110th Street, Suite 200
Overland Park, Kansas 66210
kridgway@fbr2law.com
brunyon@fbr2law.com

                                    */s/ Benjamin R. Prell*
                                    Attorney for Plaintiff