IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

C.F.B., a minor, by and through her next friend
TERRI E. BAKER,

      Plaintiff,

      v.

SHERIFF CALVIN HAYDEN, et al.,

      Defendant.

Case No. 16-2645-CM

## MEMORANDUM AND ORDER

Plaintiff C.F.B., a minor, by and through her grandmother and next friend, Terri E. Baker, brings this action against Johnson County Sheriff Calvin Hayden, Lieutenant Thomas Reddin, Sergeant Christopher Mills, and Deputy Travis Turner. Plaintiff claims that defendants violated her civil rights under 42 U.S.C. § 1983 when defendants unlawfully seized her from her grandparents' driveway. This matter is now before the court on plaintiff's Motion to Exclude Certain Testimony of Dr. Milfred Dale and Strike Portions of His Expert Report (Doc. 114). Plaintiff alleges that certain testimony of defendants' expert witness, Dr. Milfred Dale, should be excluded as unreliable, irrelevant, or more prejudicial than probative under Federal Rule of Evidence 403. For the reasons set forth below, the court grants plaintiff's motion in part and denies it in part.

**I.   Factual Background**

On September 2, 2015, defendants Deputy Travis Turner, Sergeant Christopher Mills, and Lieutenant Thomas Reddin arrived at the home of Linus and Terri Baker with a temporary Protection from Abuse Order meant for their daughter, Maggie McCormick. The order granted sole custody of her child, S.F.M., to her husband, Ryan McCormick. Linus Baker was in the driveway when defendants arrived, along with plaintiff and C.F.B., who is Maggie's child with Austin Banks. Linus demanded the

-1-

officers leave, but they refused stating "I've got a court order, we're here to take [S.F.M.] . . . she's going with us." As Linus returned to his house, defendant Mills reached down to pick up plaintiff asking, "are you [S.F.M]? Come here sweetheart." Plaintiff cried and screamed for her mom, and defendant Mills carried her to a van where Ryan McCormick was waiting to verify if she was the right child. When asked, Ryan responded with "no, [S.F.M.] is a boy." Defendant Mills then carried plaintiff back onto the property and gave her back to Linus.

Plaintiff filed the present suit against defendants for unlawful arrest and excessive force. As part of the litigation, plaintiff, as well as several of her caretakers, were evaluated by Dr. Milfred Dale, Ph.D., J.D., a licensed psychologist. Dr. Dale was hired by defendants to conduct a comprehensive evaluation of plaintiff and her caretakers to determine the source, nature, and extent of any mental health injuries or conditions incurred by plaintiff, as well as the nature and extent of any future care and treatment for such injuries. Dr. Dale interviewed plaintiff, Linus and Terri Baker, faculty of plaintiff's school, and conducted multiple surveys and data collection and analysis. As a result, Dr. Dale produced a 50-page report outlining his findings as well as appendices with relevant documents and exhibits.

Plaintiff now moves to exclude portions of Dr. Dale's expert report because they are either unreliable, irrelevant, or are more prejudicial than probative under Federal Rule of Evidence 403.

**II.     Legal Standard**

Federal Rule of Evidence 702 determines the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993). Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) the testimony is based on sufficient facts or data;

(3) the testimony is the product of reliable principles and methods; and

(4) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Tenth Circuit has developed a two-part, gatekeeping test for trial courts to apply when considering whether proposed expert testimony is admissible, which requires the court to determine first, whether the expert is qualified "by knowledge, skill, experience, or education," and second, whether the proposed testimony is reliable and relevant. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). The party advancing the expert testimony bears the burden of showing that the testimony is admissible. *Nacchio*, 555 F.3d at 1241. However, the rejection of expert testimony is the exception rather than the rule. Fed. R. Evid. 702. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Goebel v. Denver and Rio Grande W. R. Co.*, 346 F.3d 987, 994 (10th Cir. 2003).

## III. Analysis

Plaintiff argues that several of Dr. Dale's statements in his expert report are inadmissible. First, plaintiff argues that Dr. Dale's statements and rhetorical questions posed about the restrictions on information available for his evaluation are not relevant to his conclusion about plaintiff's mental state. Next, plaintiff argues that Dr. Dale's assessment of Linus and Terri Baker infringes on a critical role of the jury by speaking to their credibility. Plaintiff next argues that Dr. Dale's questions to the Bakers concerning Post-Traumatic Stress Disorder ("PTSD"), encoding, other mental diseases, and the treatment thereof is not relevant to his conclusion about plaintiff's mental state. Lastly, plaintiff argues that Dr. Dale's recounting of background information about plaintiff's family members is neither reliable nor relevant and is more prejudicial than probative.

### *a. Restrictions on Information Available for Dr. Dale's Evaluation*

Plaintiff first argues that statements made by Dr. Dale regarding the restriction of evidence

available to him are ". . . speculative, argumentative, and poorly supported theories regarding the motives and credibility of C.F.B.'s family members, and they are completely unrelated to his opinions about C.F.B.'s mental state." (Doc. 114, at 6). Specifically, plaintiff takes issue with the conclusionary statement near the end of Dr. Dale's report, which reads:

> And finally, one cannot help but be struck in this situation by the measures taken to restrict the information available for this evaluation. Were these measures efforts to "protect the story" for the legal case? If a child was truly traumatized and severely emotionally distressed, wouldn't all of her caregivers want to participate in sharing these details to guarantee [C.F.B.] got not only "justice" but the remedial and restorative care she presumably would need.

(Doc. 114-2, at 30). The relevance of expert testimony under *Daubert* is essentially a question of whether the testimony will assist the trier of fact to understand the evidence or determine a fact at issue. *Hatfield v. Wal-Mart Stores, Inc.*, 335 F. App'x 796, 800-02 (10th Cir. 2009). The *Daubert* test also applies to both scientific and non-scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999). An expert's testimony must be based on actual knowledge, not subjective belief or unsupported speculation. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). Further, Federal Rule of Evidence 403 states, in part, that evidence may be excluded if its probative value is outweighed by unfair prejudice.

In this section of the report, Dr. Dale seems to be drawing an inference that, given that plaintiff's medical records indicate that her family members did not seek any treatment, plaintiff in fact does not suffer from any kind of PTSD. However, here, Dr. Dale does not state an opinion based on facts or data, but instead creates an inference in the form of a rhetorical question. Thus, because Dr. Dale's statements here are not based on scientific facts or evidence, the proper avenue for this argument would be through cross-examination rather than expert testimony. Furthermore, Dr. Dale's statements here do not draw a conclusion about plaintiff's mental state, but instead raise questions about the motives of Mr. and Mrs. Baker. While the actions of plaintiff's caretakers and her medical records are undoubtedly relevant to

Dr. Dale's analysis and conclusion about her mental state, the potential motivating factors behind plaintiff's caretakers and their behavior seems markedly less so. Thus, these observations seem to be speculative analysis of plaintiff's caregivers' motives rather than legitimate factors in her psychological analysis. The jury could likely reach the same conclusion through cross-examination without the assistance of defendant's expert. Consequently, this portion of the report would not assist the trier of fact to determine a fact at issue, and the court grants this part of plaintiff's motion. The paragraph cited above, in which Dr. Dale poses theories about the restriction of evidence available to him, shall be excluded from the report.

### *b. Assessments of Linus and Terri Baker's Interview Behavior*

Plaintiff next argues that several of Dr. Dale's comments regarding the scheduling and conditions of the interview are inadmissible as attorney argument couched in expert testimony. This section contains Dr. Dale's statements about the recording of the interview, including the Bakers' refusal to fill out questionnaires, multiple comments about the Bakers' demeanor during the interview, the way the Bakers recounted the stressor event, and suggestions about the motives of the Bakers and whether they "really believed" the police would have taken additional children. (Doc. 114-2, at 21-22).

Defendant is correct that these statements in and of themselves do not go directly to the credibility of the Bakers. In *United States v. Toledo*, the Tenth Circuit, in citing the Eighth Circuit, noted that the testimony of a pediatrician, that he could "see no reason why [the victim] would not be telling the truth in this matter," was inadmissible. *See* 985 F.2d 1462, at 1470 (10th Cir. 1993) (citing *United States v. Azure*, 801 F.2d 336, 339-40 (8th Cir. 1981)). The Tenth Circuit has further held that testimony going to the credibility of a witness is inadmissible because it usurps a critical function of the jury, which is to make its own determination of credibility. *Id.* However, Dr. Dale's statements that the Bakers were "mildly uncooperative," or "quickly becom[ing] defensive," or "difficult person[s] to interview," do not

rise to the level of blatant credibility assessments as the case cited by the Tenth Circuit. (Doc. 114-2, at 21-23). Consequently, these statements do not infringe on the jury's critical role and are not inadmissible as attorney argument.

However, the question remains as to whether these statements are relevant to Dr. Dale's conclusion that plaintiff suffers from no mental trauma. Ultimately, Dr. Dale's expert testimony was intended to be used in this case to determine the "source, nature, and extent of any mental health injuries or conditions incurred by Plaintiff. . ." (Doc. 114-1, at 1). While the information gathered from an interview with the Bakers would certainly seem to be relevant to the analysis of any existing trauma, the court fails to see how observations about the Bakers' behavior during the interview have any bearing on that question. Thus, the court finds that while the statements at issue here do not go to credibility as plaintiff claims, they would not assist the trier of fact to determine a fact at issue. Consequently, the court grants this part of plaintiff's motion, and the seven portions of the report identified in plaintiff's motion (Doc. 114, at 7-8) shall be excluded from the report.

### *c. The Bakers' knowledge of PTSD, Encoding, and Other Mental Conditions*

Plaintiff next argues that Dr. Dale's questions to Linus and Terri Baker about their knowledge of PTSD, encoding, and other mental conditions are not relevant to Dr. Dale's conclusion about plaintiff's lack of mental trauma. In this section of the report, Dr. Dale asked the Bakers whether they were familiar with those mental conditions and what they knew about treatment for them. He records their responses as "either unfamiliar with the concept or did not want to be viewed as familiar with it," and "upset at my questions of whether [C.F.B.] was cognitively sophisticated enough to encode the events sufficient to form and accurately retrieve memories of the event." (Doc. 114-2 at 24).

Asking caretakers about what they believe is wrong with a child and how they would treat such an issue is almost certainly relevant to any type of medical analysis. Children, especially those as young

as plaintiff, may either have difficulty expressing their thoughts and feelings or have trouble remembering certain details and events. This is made clear by Dr. Dale's interviews of plaintiff, where he notes that there are several aspects of the stressor event that plaintiff either misremembers or has forgotten entirely. (Doc. 114-2, at 30). Thus, Dr. Dale's questions to the Bakers concerning PTSD, encoding, and other mental conditions and their treatment are not attempts to undermine their credibility, but rather are a part of the process of gathering information about her symptoms and past treatment. Consequently, the court is satisfied that this portion of Dr. Dale's report would assist the trier of fact to determine a fact at issue, and the court denies this part of plaintiff's motion.

### *d. Background Information on Plaintiff's Family Members*

Lastly, plaintiff argues that Dr. Dale's comments on plaintiff's family's background are inadmissible. In his report, Dr. Dale recounts some "background information" including the relationship between Maggie and Ryan McCormick, referencing domestic violence and substance abuse between Maggie and Ryan, a Child in Need of Care case regarding S.F.M., the fact that Maggie has had counseling and been prescribed Adderall, summarizing Maggie's arrest and sentencing for driving under the influence, the fact that Maggie and Ryan denied any problems with substance abuse and mental illness, Linus Baker's minor arrest as a young adult, and a summary of the events leading up to the stressor event. (Doc. 114-2, at 4-7). Plaintiff alleges that this portion of Dr. Dale's report is neither reliable nor relevant and is more prejudicial than probative under Federal Rule of Evidence 403.

Plaintiff first argues that the comments made by Dr. Dale in this section of the report are not reliable because they have no basis in the knowledge and experience of his discipline. Reliability under the court's gatekeeping function requires that the testimony of the expert be based on scientific knowledge, which is defined as that which is grounded in the methods and procedures of science or derived by the scientific method. *Daubert*, 509 U.S. at 590. Further, "disagreements over the

interpretation of diagnostic data, and even the correct diagnostic procedures," are common in the mental health profession. *McCarty v. Liberty Mut. Ins.*, No. 15-CV-210-R, 2017 WL 676459, at * 7 (D. Wyo. Feb. 3, 2017). As stated above, the purpose of Dr. Dale's testimony is to evaluate the "source, nature, and extent of any mental health injuries or conditions incurred by Plaintiff. . ." Naturally, an analysis of those closest to plaintiff to determine if they, rather than defendants, were a source of trauma would be part of that determination. Furthermore, even if plaintiff alleges that the methodology Dr. Dale used was erroneous, this question is one of credibility to be left to the jury. Differences in opinion about the outcomes and effectiveness of different tests and methodologies, especially in a field like psychology, do not automatically render a given test or methodology unreliable. Plaintiff has not made a persuasive case that Dr. Dale's methods are so erroneous to require exclusion.

Plaintiff next argues that Dr. Dale's statements concerning plaintiff's family's background are not relevant. Again, as stated above, the purpose of Dr. Dale's expert testimony is to evaluate the source, nature, and extent of any mental conditions plaintiff may have. (Doc. 114-1, at 1). If, for example, it were found that some source other than defendants' actions were the cause of plaintiff's mental trauma, that finding would be relevant to both damages and causation. Thus, this portion of Dr. Dale's testimony is relevant to both damages and causation as it relates to plaintiff's claim.

Finally, plaintiff argues that the statements made by Dr. Dale about plaintiff's family's background are more prejudicial than probative under Federal Rule of Evidence Rule 403. However, Dr. Dale ultimately reaches the conclusion that plaintiff's family is not a source of emotional trauma for plaintiff. Thus, Dr. Dale's statements here neither implicate plaintiff's family as being a source of trauma nor any more or less reliable as witnesses. Consequently, the probative value of ruling out plaintiff's family as a source of trauma outweighs any prejudice that may be present, and the court rejects this argument as well. Consequently, the court denies this part of plaintiff's motion.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Exclude Certain Testimony of Dr. Milfred Dale and Strike Portions of His Expert Report (Doc. 114) is granted in part and denied in part. Plaintiff's motion is granted as to Dr. Dale's comments on the restriction of evidence available for his evaluation and Dr. Dale's assessments of the behavior of Linus and Terri Baker during their interview. This evidence will be excluded. The rest of plaintiff's motion is denied.

Dated August 7, 2019, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
**United States District Judge**